UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SMITHS GROUP PLC,

    Plaintiff,

v.                                                                                          Case No.  1:08-CV-407

NATIONAL RE/SOURCES L.L.C.,                                        HON. GORDON J. QUIST

    Defendant.
_____/

**MEMORANDUM ORDER**

Plaintiff, Smiths Group PLC ("Smiths"), alleges that Defendant, National RE/sources L.L.C. ("National"), is liable for breach of an Environmental Indemnity Agreement ("EIA") executed as part of National's subsidiary's purchase of certain real property (the "Property") from Smiths' former subsidiary.  Pursuant to the Court's September 4, 2008 Case Management Order, the parties have filed cross-motions for summary judgment.  The Court heard oral argument on the motions on June 10, 2009, and the matter is now ready for decision.  The facts, which are not in dispute for purposes of the instant motions, are fully set forth in the parties' briefs and need not be restated here.

The issue presented is one of contract interpretation.  The specific questions are whether the EIA obligates National to:  (1) remediate known volatile organic compound ("VOC") contamination identified in both the September 16,1997 eData Services Corp. Report ("eData Report") and the August 28, 2007 Michigan Department of Environmental Quality Administrative Order ("MDEQ Order") directing Smiths to remediate the contamination on the Property; and (2) indemnify Smiths against the obligations imposed by and costs to be expended under the MDEQ Order.  The answer depends on what constitutes a "Known Condition."  The parties arguments, as the Court understands

them, boil down to "substance" versus "source."  In other words, Smiths asserts that National is liable if the substances identified for remediation in the MDEQ Order were identified in the eData Report, whereas National contends that it is only liable for the contamination in the MDEQ Order if the source of that contamination was identified in the eData Report.  Smiths contends that under its interpretation, National is liable because the MDEQ Order and the eData Report identify the same VOC contamination.  National contends that it is not liable because the Plating Room contamination, which was discovered two years after the National's purchase of the Property, was never identified in the eData Report as a source of the contamination.

The Court applies familiar principles of Michigan law in construing the EIA.  Contracts should be construed to give effect to the intentions of the parties and to give a reasonable meaning to all provisions.  *Klever v. Klever*, 333 Mich. 179, 186, 52 N.W.2d 653, 656-57 (1952).  If the language of the contract is clear and unambiguous, the court should construe it according to its plain sense and meaning.  *Grosse Point Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 198, 702 N.W.2d 106, 113 (2005).  A contract is ambiguous if its provisions are capable of conflicting interpretations.  *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 467, 663 N.W.2d 447, 453 (2003).

The EIA imposes the following obligations on National with respect to the Property:

> 2.0   Environmental Remediation.  National takes full responsibility for the prompt and effective remediation of the Known Conditions.
>
> 2.1   Environmental Indemnification.  Subject to the conditions set forth in this Agreement, National shall indemnify, defend (with counsel selected by National) and hold harmless the Indemnitees from and against any and all threatened and actual Environmental Claims (as defined in Section 2.4 below) made by Third Parties against any Indemnitee.

(EIA §§ 2.0, 2.1.)

The EIA also defines certain key terms. "Known Conditions" means "the Environmental Conditions identified in the eData Services Corp. report dated September 16, 1997 . . . ." (EIA § 1.6.) In turn, "Environmental Conditions" means

> all Hazardous Materials that exist on, or are emanating or have emanated from, the Eastern Ave. Property on the date hereof that require removal, remedial or other response action or that result in claims by or liabilities to Third Parties, including claims by governmental agencies, regardless of whether the presence of such Hazardous Materials is known or unknown as of the date hereof . . . .

(EIA § 1.2.) "Hazardous Materials" means any "substance" which meets at least one of several criteria, including "the presence of which requires notification, investigation, removal or remediation under any Environmental Law" or "which is or becomes defined as 'hazardous,' 'toxic,' 'noxious,' 'waste,' 'substance,' 'material,' 'pollutant' or 'contaminant' or requires removal or remediation under any present or future Environmental laws or amendments thereto." (EIA § 1.4(1) and (2).) There is no dispute that the VOC contamination at issue is a Hazardous Material as defined by the EIA. Finally, "Unknown Conditions" means "all Environmental Conditions other than the Known Conditions." (EIA § 1.12.)

The definitions quoted above answer the specific issue. Under the EIA, a substance that is a Hazardous Material is an Environmental Condition so long as the substance existed on the Property, or was emanating from or emanated from the Property, as of the date the EIA was executed. An Environmental Condition, in turn, is either Known or Unknown. Known Conditions are all Environmental Conditions (Hazardous Materials or "substances") identified in the eData Report, and Unknown Conditions are all other Environmental Conditions. Therefore, regardless of its source, so long as the VOC contamination identified in the MDEQ Order was identified in the eData Report, National is obligated to remediate that contamination and to indemnify Smiths for the

3

obligations imposed by the MDEQ Order. On the other hand, National has no liability for substances not identified in the eData Report.

National argues that it is not liable for the Plating Room contamination because that contamination was not identified or disclosed in the eData Report as a source of the VOC, or solvent, contamination. National points out that the eData Report stated that the Plating Room was a source of acid waste contamination, but there was no indication that the Plating Room was even suspected as a source of solvent contamination. Thus, National argues, the solvent contamination emanating from the Plating Room area is an Unknown Condition that was not identified in the eData Report. While the Court would be inclined to agree with National if the EIA did not specifically define the term "Known Conditions," that is not the case. The EIA provides a specific, controlling definition that was part of the parties' agreement and which the Court must apply. The controlling question under the agreed-upon definition is whether the substance was disclosed in the eData Report.

National also contends that it is not liable under Section 2.6(v), which provides:

> 2.6 <u>Excluded Matters</u>. Nothing in this Agreement shall be construed to impose on National any liability or obligation to indemnify any Indemnitee for any claims arising from (i) any Unknown Conditions . . . (v) except as provided in Section 2 above with respect to the Known Conditions, any other violation by Smiths (or its predecessors) of any Environmental Laws in the conduct of its business at the Eastern Ave. Property . . . .

(EIA § 2.6.) National contends that this provision excludes its liability for the Plating Room contamination because the MDEQ Order discloses that Smiths was responsible for the Plating Room waste. This exclusion does not benefit National, however, because it explicitly recognizes that National remains liable for the Known Conditions, i.e., substances, disclosed in the eData Report.

Based upon the foregoing, the Court will grant Smiths' motion for summary judgment with regard to the interpretation of "Known Conditions" and National's obligations resulting from that

4

interpretation and deny National's motion. Because other issues remain, as represented by counsel at the oral argument, the Court will not enter a judgment for Smiths and will set a Rule 16 Scheduling Conference. Therefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (docket no. 24) is **GRANTED** as follows:

1. So long as the VOC contamination identified in the MDEQ Order was identified in the eData Report, National is obligated under Sections 2.0 and 2.1 of the EIA for the remediation of such contamination at the Property and to indemnify Smiths against the obligations imposed on and costs incurred by Smiths pursuant to the MDEQ Order. National is not obligated with regard to any substance not identified in the eData Report.

2. Because it is undisputed that the MDEQ Order required Smiths to remediate the same VOC contamination identified in the eData Report, National has breached its remediation and indemnification obligations to Smiths under the EIA.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (docket no. 22) is **DENIED**.

**IT IS FURTHER ORDERED** that a Rule 16 Scheduling Conference is set for **August 20, 2009, at 3:00 PM**. The parties shall file a joint status report no later than August 17, 2009. Counsel may attend by telephone.


Dated:  June 25, 2009                                      /s/ Gordon J. Quist
                                                           GORDON J. QUIST
                                                           UNITED STATES DISTRICT JUDGE